**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

---

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 08-04413 |
| BHM Technologies Holdings, Inc., *et al.*, | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

---

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1),
364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND FED. R. BANKR. P. 2002,
4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION
FINANCING, (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL,
(III) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES AND (IV) SCHEDULING A FINAL HEARING
PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)
("FINAL DIP FINANCING ORDER")

Upon the joint motion, dated May 19, 2008 (the "Motion"), of BHM

Technologies, LLC ("BHM" or "Borrower") and its affiliated debtors,[1] each as debtor and

debtor-in-possession (collectively, the "Debtors") in the above-captioned cases (the

"Cases") for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1),

364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C.

§§ 101, *et seq*. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and

Western District of Michigan Local Bankruptcy Rules 4001-2 and 4001-3 seeking:

---

[1]     Such affiliated debtors are: BHM Technologies Holdings, Inc., Heckethorn Manufacturing Co.,
Inc., Heckethorn Holdings, Inc., Morton Welding Holdings, Inc., Morton Welding Co., Inc., The
Brown Corporation of America, The Brown Company of Waverly, LLC, The Brown Company of
Ionia, LLC. The Brown Corporation of Greenville, Inc., The Brown Company of Moberly, LLC,
The Brown Realty Company, LLC, The Brown Company International, LLC, Midwest Stamping &
Manufacturing Co., and Midwest Stamping, Inc.

1

I.       authorization for (a) Borrower to obtain up to $45,000,000 in principal amount of postpetition financing (the "DIP Financing") on the terms and conditions set forth in this Order and the Credit and Guarantee Agreement, dated as of June 6, 2008 (substantially in the form attached to the Motion as Exhibit A, and as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Agreement";[2] together with all agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Documents"), among the Borrower, BHM Technologies Holdings, Inc. ("Holdings") and each of the direct and indirect domestic subsidiaries of Holdings named therein (such subsidiaries, collectively with Holdings, the "Guarantors"), Lehman Commercial Paper Inc. ("LCPI"), as administrative agent (in such capacity, the "DIP Agent") for itself and a syndicate of other financial institutions party thereto (collectively, the "DIP Lenders"), arranged by LCPI (in such capacity, the "DIP Arranger") General Electric Capital Corporation, as documentation agent (in such capacity, the "Documentation Agent") and the DIP Lenders, and (b) the Guarantors to guaranty the Borrower's obligations in respect of the DIP Financing;

II.      authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents, to perform such other and further acts as may be necessary or appropriate in connection therewith and to grant the liens and security interests provided for in the DIP Documents;

III.     authorization pursuant to sections 361, 362 and 363 of the Bankruptcy Code for the Debtors to (a) use the Cash Collateral (as defined in paragraph 11 below), and all other Prepetition Collateral (as defined in paragraph 3(d) below) and (b) provide adequate protection to the lenders (collectively, the "Prepetition First Lien Lenders") under the First Lien Credit Agreement, dated as of July 21, 2006 (as amended, supplemented or otherwise modified, the "Prepetition First Lien Credit Agreement"; and together with any other security, pledge or guaranty agreements and all other documentation executed in connection with any of the foregoing, as amended, supplemented or otherwise modified, the "Prepetition First Lien Loan Documents"), among the Borrower and the Guarantors party thereto, the Prepetition First Lien Lenders and LCPI, as administrative agent (in such capacity, the "Prepetition First Lien Agent") for the Prepetition First Lien Lenders;

IV.      authorization for the Debtors to provide interim adequate protection to the lenders (collectively, the "Prepetition Second Lien Lenders", and together with the Prepetition First Lien Lenders, the "Prepetition Lenders")) under the

_____

[2]        Unless defined in this Order, capitalized terms are used herein as defined in the DIP Agreement.  The form of DIP Agreement attached to the Motion has been supplemented by the Borrowing Base Supplemental Agreement, filed with this Court on June 13, 2008 (Docket No. 241).

Second Lien Credit Agreement, dated as of July 21, 2006 (as amended, supplemented or otherwise modified, the "Prepetition Second Lien Credit Agreement"; and together with any other security, pledge, or guaranty agreements and all other documentation executed in connection with any of the foregoing, as amended, supplemented or otherwise modified, the "Prepetition Second Lien Loan Documents"), among the Borrower and the Guarantors party thereto, the Prepetition Second Lien Lenders and LCPI, as initial administrative agent and SAC Domestic Investments, L.P., as successor administrative agent (the latter, in such capacity, the "Prepetition Second Lien Agent") for the Prepetition Second Lien Lenders;

V.      authorization for the DIP Agent to accelerate the Loans and terminate the Commitments under and in accordance with the DIP Agreement upon the occurrence and continuance of an Event of Default, subject to the provisions of this Order;

VI.     authorization to grant liens to the DIP Agent, for its benefit and the benefit of the DIP Lenders, on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

VII.    the waiver by the Debtors of any right to surcharge costs and expenses against the Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code;

VIII.   to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion before this Court to consider entry of an interim order (the "Interim Order") (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Agreement up to $30,000,000 in principal amount of Loans to be used for working capital and general corporate purposes of the Debtors, (b) granting liens, claims and other rights to the DIP Agent and the DIP Lenders, (c) authorizing the Debtors to use the Cash Collateral (as hereinafter defined) and the other Prepetition Collateral, and (d) granting adequate protection to the Prepetition First Lien Lenders and, on an interim basis, to the Prepetition Second Lien Lenders;

IX.     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order" or the "Order") authorizing the Borrower on a final basis to continue to use the Cash Collateral and the other Prepetition Collateral, to borrow the balance of the Loans under the DIP Agreement, to grant liens, claims and other rights to the DIP Agent and the DIP Lenders, and to grant adequate protection on a final basis to the Prepetition First Lien Lenders (but not the Prepetition Second Lien Lenders), and authorizing and approving the other relief requested in the Motion to become effective pursuant to the Final Order.

053113-1959-11658-NY01.2730043.5

The Interim Hearing having been held by this Court on May 21, 2008, the Debtors having been authorized by the Interim Order to enter into the DIP Documents, the DIP Documents having been executed on June 6, 2008, objections to the Motion having been filed on June 3, 2008 by the United States Trustee for the Western District of Michigan and on June 13, 2008 by the official committee of unsecured creditors appointed in the Cases June 6, 2008 (the "Committee"), such objections having been settled or withdrawn and the Final Hearing having been held by this court on June 17, 2008 and upon the record made by the Debtors at the Interim Hearing and the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction*.  This Court has core jurisdiction over the Cases commenced on May 19, 2008 (the "Petition Date"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.  Notice of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing was served by the Debtors on their top fifty largest (on a consolidated basis) unsecured creditors (including the creditors who subsequently were appointed to the Committee), the cash management banks with whom the Debtors maintain deposit, lockbox, concentration, disbursement and similar accounts (the "Cash Management Banks"), counsel to the Prepetition First Lien Agent, counsel to the DIP Agent, the United States Trustee for the Western District of Michigan, counsel to the

4

Prepetition Second Lien Agent, the Internal Revenue Service, the Securities and Exchange Commission and all other parties known by the Debtors to have a lien on or security interest in any of the Collateral. Notice of the Final Hearing was also served by the Debtors on the top twenty largest unsecured creditors of each Debtor. The Committee has had adequate actual notice of the Motion and the Final Hearing. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.      *Debtors' Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 17 and 18 below) the Debtors admit, stipulate, and agree that:

(a)      as of the Petition Date, the Debtors were indebted and liable to the Prepetition First Lien Lenders, without defense, counterclaim or offset of any kind in respect of loans, in the approximate aggregate principal amount of $265,000,000 made by the Prepetition First Lien Lenders pursuant to, and in accordance with the terms of, the Prepetition First Lien Loan Documents, plus accrued and unpaid interest thereon and fees and expenses (including fees and expenses of the Prepetition First Lien Agent's attorneys and financial advisors) and other obligations incurred in connection therewith as provided in the Prepetition First Lien Loan Documents (collectively, the "Prepetition First Lien Obligations");

(b)      the Prepetition First Lien Obligations constitute the legal, valid and binding obligation of the Debtors, enforceable in accordance with their terms

5

(other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(c)    (i) no portion of the Prepetition First Lien Obligations is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, existing, arising or accruing on or prior to the date hereof, against the Prepetition First Lien Agent, the Prepetition First Lien Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors; and

(d)    the liens and security interests granted to the Prepetition First Lien Agent, for its benefit and the benefit of the Prepetition First Lien Lenders, pursuant to the Prepetition First Lien Loan Documents are (i) valid, binding, perfected, enforceable, first priority (subject to the Permitted Prepetition Liens (as defined below)) liens on and security interests (the "Prepetition First Priority Liens") in the personal and real, tangible and intangible property constituting "Collateral" under, and as defined in, the Prepetition First Lien Loan Documents (including the Cash Collateral, the "Prepetition Collateral"), (ii) not subject to avoidance, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the Carve Out (as defined in paragraph 13 below), (B) the liens and security interests (I) granted in the DIP Agreement to the DIP Agent to secure the DIP Financing and (II) granted in this Order to the Prepetition First Lien Agent to provide adequate protection to the Prepetition First Lien Lenders, and (C) valid,

6

perfected, enforceable and non-avoidable liens permitted under the Prepetition First Lien Loan Documents to the extent such permitted liens (the "Permitted Prepetition Liens") are (I) senior in priority as a matter of non-bankruptcy law (including without limitation the Michigan Special Tools Lien Act, Mich. Comp. Laws § 570.541 *et seq.* and the Michigan Ownership Rights in Dies, Molds and Forms Act, Mich. Comp. Laws § 445.611 *et seq.*) (which liens, whether arising prepetition or postpetition, are referred to as the "Tooling Liens")) and (II) not subject to subordination to the liens of the Prepetition First Priority Liens pursuant to the Bankruptcy Code or any subordination or inter-creditor agreement.

(e)      Holdings, the Borrower, the Prepetition First Lien Agent and the Prepetition Second Lien Agent are parties to an Intercreditor and Lien Subordination Agreement, dated as of July 21, 2006 (as amended, supplemented or otherwise modified, the "Intercreditor Agreement") pursuant to which the liens and security interests granted in favor of the Prepetition Second Lien Agent on the property that secures the Prepetition Second Lien Obligations were subordinated to the liens and security interests of the Prepetition First Lien Agent on such property to the extent and in the manner set forth therein.

4.      *Findings Regarding The DIP Financing.*

(a)      Good cause has been shown for the entry of this Order.

(b)      The Debtors have an immediate and ongoing need to obtain the DIP Financing and to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors and expenses of administration of these

7

Cases.  The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting the DIP Liens (as defined in paragraph 7 below) and the Superpriority Claims (as defined in paragraph 6 below) under the terms and conditions set forth in this Order and the DIP Documents.

(d)    The terms of the DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Order are fair and reasonable, do not offend public policy, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)    The DIP Documents, the use of the Prepetition Collateral (including the Cash Collateral) and the grants of adequate protection with respect to the Prepetition First Priority Liens have been the subject of good faith, arm's-length negotiations between Debtors, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without

8

limitation, (i) all loans made to the Debtors pursuant to the DIP Agreement and (ii) all other obligations of the Debtors under or in connection with the DIP Documents and/or this Order (collectively, the "DIP Obligations") and all rights, benefits and remedies granted to the DIP Agent and the DIP Lenders under or in connection with the DIP Documents and/or this Order, and all of the First Lien Adequate Protection Obligations, shall be deemed to have been provided or received, as the case may be, by the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders, and any such affiliates, in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth herein, and shall be entitled to, and are hereby granted, the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is stayed, amended, vacated, reversed or modified, on appeal or otherwise.

      (f)      Based upon the consent of the Prepetition First Lien Lenders, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition First Lien Agent and the Prepetition First Lien Lenders.  Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition First Lien Agent and the Prepetition First Lien Lenders are or will be adequately protected with respect to any non-consensual use of the Prepetition Collateral (including the Cash Collateral).

      (g)      In section 6.1 of the Intercreditor Agreement, the Prepetition Second Lien Agent agreed, for itself and the Prepetition Second Lien Lenders, to:

      i.      "raise no objection to such Cash Collateral use or DIP Financing…"

ii.      "the extent the Liens securing the First Lien Obligations are subordinated to or *pari passu* with such DIP Financing, [it] will subordinate its Liens in the Collateral…." and

iii.     "not request adequate protection…except to the extent permitted by Section 6.3."

(h)      Nothing in this Order modifies or otherwise affects the provisions of the Intercreditor Agreement, which shall remain in full force and effect.

(i)      In light of the Intercreditor Agreement, no negotiations with or other concessions to the Prepetition Second Lien Lenders were necessary to authorize the use of Cash Collateral, the Prepetition Collateral or the DIP Financing, in each case in good faith and the Interim Second Lien Adequate Protection Liens awarded in the Interim Order have ceased to exist and are no longer of any force or effect.

(j)      The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

5.      *Authorization Of The DIP Financing.*

(a)      The authorization conferred on the Debtors by the Interim Order to enter into and obtain up to $30,000,000 in loans under the DIP Documents, to pay interest, fees and expenses in connection with, and to repay, the DIP Financing, and to provide adequate protection to the Prepetition First Lien Lenders remains in full force and effect.  The Debtors are authorized to enter into the DIP Documents and, in the case of the Borrower, to borrow thereunder up to an aggregate principal amount of $45,000,000 of the Loans for working capital and general corporate purposes of the Debtors, including without limitation, to provide cash collateral for a letter of credit that supports the

10

Debtors' obligations under a workers' compensation plan, to make adequate protection payments to the Prepetition First Lien Lenders in accordance with paragraph 13(c) of this Order and to pay interest, fees and expenses in connection with, and to repay, the DIP Financing.

(b)    In furtherance of the foregoing and without further notice or approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents (and all such acts that were performed pursuant to the authorization in the Interim Order are hereby ratified), including without limitation:

i.    the execution, delivery and performance of the DIP Documents;

ii.    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the requisite DIP Lenders may agree, and, unless the Committee, which shall be given at least three business days' advance notice of any such amendment, waiver, consent or modification, objects in writing delivered to counsel for the Debtors and counsel for the DIP Agent at least one business day before the effectiveness of such amendment, waiver, consent or other modification, no further notice or approval of this Court shall be required for any such amendments, waivers, consents or other modifications (and any fees paid in connection therewith) that do not (A) shorten the maturity of the Loans, (B) increase the Commitments or the rate of interest payable on the Loans (excluding the increase provided in the DIP Agreement after an Event of Default), or (C) change any Event of Default, add any covenants or amend the covenants in the DIP Documents, in any such case to be materially more restrictive;

iii.    the non-refundable payment to the DIP Agent, the DIP Arranger, the Documentation Agent, or the DIP Lenders, as the case may be, of the fees referred to in the DIP Agreement or the Motion, and reasonable costs and expenses as may be due from time to time, including without limitation, reasonable fees and

11

expenses of the professionals retained as provided in the DIP Documents and this Order; and

iv.     the performance of all other acts required under or in connection with the DIP Documents.

(c)     The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.     *Superpriority Claims.*

(a)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims (the "Superpriority Claims") against the Debtors and the property of their estates with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, 1114 or other section of the Bankruptcy Code, whether or not such expenses or claims arise in these Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, including, without limitation, a proceeding under chapter 7 of the

12

Bankruptcy Code, or become secured by a judgment lien or other lien, levy or attachment, which Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.

   7. *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of any Collateral, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "<u>Collateral</u>"; and all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "<u>DIP Liens</u>"):

   (a) <u>First Lien On Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all real and personal, tangible and intangible prepetition and postpetition property and assets of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not Prepetition Collateral or subject to a Permitted Prepetition Lien (collectively, the "<u>Unencumbered Property</u>"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames,

rights under license agreements and other intellectual property, capital stock of the subsidiaries of Holdings and the proceeds of all of the foregoing, underlined provided that, the Unencumbered Property shall not include the Avoidance Actions, any proceeds or property recovered in respect of any Avoidance Actions or any other assets upon which security may not be lawfully granted, but Unencumbered Property shall include the proceeds of such other assets upon which security may not be lawfully granted.

(swd)

(b)    Liens Junior To Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all real and personal, tangible and intangible prepetition and postpetition property and assets of the Debtors (other than the property described in the immediately following paragraph (c), as to which the DIP Liens will be as described in such paragraph), whether now existing or hereafter acquired, that is subject to Permitted Prepetition Liens which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to such Permitted Prepetition Liens.

(c)    Liens Priming Prepetition Lenders' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral.  The DIP Liens on the Prepetition Collateral shall, by consent of the Prepetition First Lien Lenders, be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition First Lien Agent and the Prepetition Second Lien Agent and the Prepetition Lenders (including, without limitation, the First Lien Adequate Protection Liens, but shall be junior to any Permitted Prepetition Liens.

14

(d)      Liens Senior To Certain Other Liens.  The DIP Liens and

the First Lien Adequate Protection Liens shall not be subject or subordinate to, or made

pari passu with, (A) any lien or security interest that is avoided and preserved for the

benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) any

liens arising after the Petition Date, including without limitation, any liens or security

interests granted in favor of any federal, state, municipal or other governmental unit,

commission, board or court for any liability of the Debtors, other than with respect to any

Tooling Liens, liens or security interests expressly permitted under the DIP Agreement, or

by the express written consent of the requisite DIP Lenders, to be senior to the DIP Liens

or (C) any other lien or security interest created under section 361, 362, 363, 364 or 552 of

the Bankruptcy Code.

8.      *Remedies After Event of Default.*  The automatic stay provisions of

section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to

permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the

occurrence and during the continuation of an Event of Default, all rights and remedies

under the DIP Documents, including, without limitation, the immediate termination of the

Debtors' use of Cash Collateral, but other than those rights and remedies against the

Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the

continuance of an Event of Default, and after five (5) business days' prior written notice

to the Debtors and their counsel (with a copy to counsel for the Prepetition Second Lien

Agent, counsel for the Committee and the United States Trustee for the Western District

of Michigan), all rights and remedies against the Collateral provided for in the DIP

Documents and this Order (including, without limitation, the right to setoff monies of the

Debtors in accounts maintained with the DIP Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and each of the Debtors hereby waives any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Order or the DIP Documents.  In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling", an "equities of the case" claim under section 552(b) of the Bankruptcy Code, or any similar doctrine with respect to the Collateral.  The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

        9.     *Limitation On Charging Expenses Against Collateral*.  No expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, be charged against or recovered from (a) the Collateral, the DIP Agent or the DIP Lenders or (b) the Prepetition Collateral, the Prepetition First Lien Agent or the Prepetition First Lien Lenders, in either case without the prior written consent of the DIP Agent and the Prepetition First Lien Agent, and no such consent shall be implied from any other action,

16

inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders.

10.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or the Prepetition First Lien Agent on behalf of the Prepetition First Lien Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

11.     *Cash Collateral.*  All of the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Lender and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition First Lien Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

12.     *Use Of Prepetition Collateral (including Cash Collateral).*  The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date under the DIP Agreement for general corporate purposes in accordance with the terms and conditions of this Order and the DIP Agreement and the Budget (as defined in the DIP Agreement) or a variance thereof permitted under the DIP Agreement, provided that (a) the Prepetition First Lien Lenders are granted adequate protection as hereinafter

17

set forth and (b) except on the terms of this Order, the Debtors are hereby prohibited from at any time using the Cash Collateral.

       13.    *Adequate Protection*.  The Prepetition First Lien Agent and the Prepetition First Lien Lenders are entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, adequate protection, which is hereby granted, of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value, if any, of such interests after the Petition Date ("<u>Diminution in First Lien Value</u>"), including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition First Priority Liens by the DIP Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  The Debtors' obligations in this paragraph 13 (including subparagraphs (a) – (d)) are herein referred to as their "<u>First Lien Adequate Protection Obligations</u>".

       (a)    <u>Adequate Protection Liens</u>.  The Prepetition First Lien Agent, for itself and for the benefit of the Prepetition First Lien Lenders, is hereby granted a valid, enforceable, perfected replacement security interest in and lien on all of the Collateral (the "<u>First Lien Adequate Protection Liens</u>"), to the extent of Diminution in First Lien Value, subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the DIP Liens and (iii) the Carve Out (as such term is defined in subparagraph 13(e)).  The First Lien Adequate Protection Liens shall be effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors, or any recording or filing, of security agreements, pledge agreements, mortgages, financing statements or

other agreements or documents.  For avoidance of doubt, the automatic stay shall remain in full force and effect with respect to the enforcement of, and the Prepetition First Lien Agent and the Prepetition First Lien Lenders shall not take any action to enforce, such Liens so long as any of the DIP Obligations remain outstanding or any Commitment (as defined in the DIP Agreement) remains in effect.

(b)      Section 507(b) Claim.  The Prepetition First Lien Agent and Prepetition First Lien Lenders shall have allowed superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "507(b) Claims"), against the Debtors and all property of their estates, in an amount equal to the Diminution in First Lien Value, if any, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims arise in these Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, including, without limitation, a proceeding under chapter 7 of the Bankruptcy Code, or become secured by a judgment lien or other lien, levy or attachment, which 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor in the Cases or any subsequent proceedings under the Bankruptcy Code, subject and subordinate only to (i) the Carve Out, and (ii) the Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent expressly set forth in this Order, the Prepetition First Lien Agent and the Prepetition First Lien Lenders shall not receive or retain any payments, property or other

19

amounts in respect of the 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash.

         (c)    <u>Payments</u>.  The Prepetition First Lien Agent shall receive from the Debtors adequate protection payments in amounts equal to (i) on the date of the closing of the DIP Agreement, all accrued and unpaid fees and expenses payable to or for the benefit of the Prepetition First Lien Agent and the Prepetition First Lien Lenders under the Prepetition First Lien Loan Documents, including without limitation, the reasonable fees and expenses owing to advisors for the Prepetition First Lien Agent and (ii) on the first Business Day of each calendar month, to the extent an invoice therefor ("<u>Invoice</u>") shall have been delivered at least ten (10) calendar days earlier (the "<u>Notice Period</u>") to the Debtors and their counsel, with a copy to counsel to the Committee, cash payment of all fees and expenses payable to the Prepetition First Lien Agent under the Prepetition First Lien Loan Documents, including without limitation, the fees and disbursements of advisors to the Prepetition First Lien Agent; provided, however, if a written objection to the Invoice, that states a cognizable basis for the objection is received by the Debtors in the applicable Notice Period, the Debtors shall not pay the disputed amounts in the Invoice until resolution of the objection.  None of the fees and expenses payable pursuant to this paragraph 13(c) shall be subject to pre-approval by this Court (but this Court shall retain jurisdiction to resolve any objection which may be filed in the Notice Period), as to the reasonableness of any such fees and expenses and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  If an objection is filed, the Debtors, and any other party with standing, shall retain the right to object to the application of the payments subject to the objection to any obligations other

20

than the principal amount of the allowed secured claims of the Prepetition First Lien Agent and the Prepetition First Lien Lenders.

      (d)    <u>Information</u>.  The Prepetition First Lien Agent, which is also the DIP Agent, may, but shall not be required to, distribute any written financial information or periodic reporting that it receives in its capacity as DIP Agent to any Prepetition First Lien Lender that is not a DIP Lender, who requests the same.

      (e)    <u>Carve Out.</u>  For purposes hereof, the "<u>Carve Out</u>" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and (ii) following receipt by the Borrower and its counsel of notice from the DIP Agent after the occurrence and during the continuance of an Event of Default under the DIP Agreement ("<u>Carve Out Trigger Notice</u>"), (a) all unpaid professional fees and expenses incurred by the Debtors and the Committee for services performed prior to the giving of the Carve Out Trigger Notice (I) that may be allowed by this Court and (II) to the extent of the cumulative amount of professional fees and expenses projected in the Budget from the Petition Date through the date the Carve Out Trigger Notice, if any, is delivered and (b) up to $1,000,000 in unpaid professional fees and expenses incurred by the Debtors and the Committee for services performed after the date the Carve Out Trigger Notice, if any, is given, to the extent (I) allowed by the Court and (II) of the aggregate amount of professional fees and expenses for the Debtors and the Committee projected in the Budget for such period; <u>provided</u> that (x) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the investigation (including discovery) by any person or entity (other than the Committee) of, or the initiation or

21

prosecution by any person or entity (including the Committee) of, any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition First Lien Lenders or the Prepetition First Lien Agent or with respect to their respective claims against the Debtors or their respective  Liens on property of the estate, (y) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates and (z) no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, be charged against or recovered from the Carve Out.

(f)        The Carve Out shall constitute a dollar-for-dollar reduction from the first proceeds due to the Prepetition First Lien Lenders from the Prepetition Collateral.

(g)        The fees and expenses for which any professional may seek payment out of the Carve Out shall be reduced by the amount of any unused retainer held by such professional at the time the Carve Out Trigger Notice is given.  Payment of any of the Carve Out through the use of Cash Collateral or DIP Financing shall not, and shall not be deemed to, reduce the DIP Obligations.  The DIP Agent and the DIP Lenders may, in their sole discretion, elect to fund a segregated account with the maximum amount of the Carve Out specified in paragraph 13(e)(ii), which funding shall be added to the DIP Obligations, but the DIP Agent and the DIP Lenders shall not be obligated to make any Loans under the DIP Agreement to fund the Carve Out or otherwise be responsible for the direct payment or reimbursement of any of the Carve Out, and nothing in this Order or

22

otherwise shall be construed to obligate them in any way to pay or reimburse any person or entity with respect to the Carve Out, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.  In the event that no such segregated account is so funded by the DIP Lenders, then the Debtors shall use commercially reasonable efforts to fund such an account in the requisite amount from the proceeds of the Prepetition Collateral as and when received by them.

14.  *Reservation of Rights of Prepetition First Lien Lenders*.

(a)  Notwithstanding any other provision hereof, the grants of adequate protection pursuant hereto are without prejudice to the rights of the Prepetition First Lien Agent or the Prepetition First Lien Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, to seek relief from the automatic stay and without prejudice to the right of the Debtors or any other party in interest to contest any such requested relief or modification. Except as expressly provided herein, nothing contained in this Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the DIP Agent, any DIP Lender, the Prepetition First Lien Agent, or any Prepetition First Lien Lender.  The consent of the Prepetition First Lien Agent and the Prepetition First Lien Lenders to the priming of the Prepetition First Priority Liens by the DIP Liens (a) is limited to the specific DIP Financing described herein and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition First Lien Agent, or the Prepetition First Lien Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

23

(b)        Neither the Prepetition First Lien Agent nor any of the Prepetition First Lien Lenders shall be required to file a proof of claim with respect to any of the Prepetition First Lien Obligations; underline provided /underline however that if (i) the Plan Support Agreements (as such term is defined in the Motion) have terminated, (ii) the $12,500,000 escrow payment made by AEP pursuant to the Escrow Agreement dated May 19, 2008 and attached to the Motion as Exhibit I (the "Escrow Payment") has been returned to AEP and (iii) either the Reorganization Plan has been withdrawn or this Court has entered an order denying confirmation of the Reorganization Plan, the Court may be requested by any party in interest to set a bar date for such a proof of claim to the extent required under applicable law.

15.        *Perfection Of DIP Liens And Adequate Protection Liens.*

(a)        The DIP Agent and the Prepetition First Lien Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent on behalf of the DIP Lenders, or the Prepetition First Lien Agent on behalf of the Prepetition First Lien Lenders, shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, the DIP Liens and the First Lien Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

24

(b)    A certified copy of this Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles, recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

(c)    The Debtors shall execute and deliver to LCPI all such agreements, financing statements, instruments and other documents as LCPI may reasonably request to evidence, confirm, validate or perfect the DIP Liens or First Lien Adequate Protection Liens, provided they are consistent herewith.

(d)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other persons or entities or (ii) the payment of any fees or obligations to any governmental entity or other person or entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of postpetition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Documents or this Order.

16.    *Preservation Of Rights Granted Under The Order.*

(a)    Except as provided in the DIP Agreement, no claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP

25

Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof), the Commitments or the First Lien Adequate Protection Obligations remain outstanding.

(b)    Unless all DIP Obligations and First Lien Adequate Protection Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order (other than a completely technical, immaterial modification) without the prior written consent of the DIP Agent and the Prepetition First Lien Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition First Lien Agent, or (ii) an order converting or dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Order, the DIP Liens and the First Lien Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and all First Lien Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Order, the DIP Liens and the First Lien Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such

26

dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

        (c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations, Superpriority Claims, 507(b) Claims or the First Lien Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition First Lien Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority, perfection or enforceability of the DIP Liens or the First Lien Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations or any First Lien Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition First Lien Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders shall be entitled to, and are hereby granted, all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, all DIP Obligations, Superpriority Claims, 507(b) Claims, First Lien Adequate Protection Obligations, DIP Liens and First Lien Adequate Protection Liens.

(d)      Except as expressly provided in this Order or in the DIP

Documents, the DIP Liens, the DIP Obligations, the Superpriority Claims, the 507(b)

Claims, the First Lien Adequate Protection Obligations, all First Lien Adequate Protection

Liens, and all other rights and remedies of the DIP Agent, the DIP Lenders, the

Prepetition First Lien Agent and the Prepetition First Lien Lenders granted by the

provisions of this Order and the DIP Documents shall survive, and shall not be modified,

impaired or discharged by (i) the entry of an order converting any of the Cases to a case

under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act

or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the

Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have

waived any discharge as to any remaining DIP Obligations or First Lien Adequate

Protection Obligations.  The terms and provisions of this Order and the DIP Documents

shall continue in the Cases, in any successor cases if the Cases cease to be jointly

administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the

DIP Liens, the First Lien Adequate Protection Liens, the DIP Obligations, the

Superpriority Claims, the First Lien Adequate Protection Obligations, the 507(b) Claims

and the other administrative claims granted pursuant to this Order, and all other rights and

remedies of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the

Prepetition First Lien Lenders granted by the provisions of this Order and the DIP

Documents shall continue in full force and effect until all DIP Obligations, and all First

Lien Adequate Protection Obligations are indefeasibly paid in full in cash.

17.      *Effect Of Stipulations On Third Parties*.  The stipulations and

admissions contained in this Order, including without limitation, in paragraphs 3 and 11 of

28

this Order, shall be binding upon the Debtors and any successor thereto (including without

limitation any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors)

in all circumstances.  The stipulations and admissions contained in this Order, including

without limitation, in paragraphs 3 and 11 of this Order, shall be binding on all parties in

interest, including, without limitation, the Committee, unless, and solely to the extent that

(a) with respect to any party in interest other than the Committee, no later than the date

that is the earlier of either forty-five (45) days after entry of the Final Order or the last

date on which objections to the approval of a disclosure statement in these Cases may be

timely filed and (b) with respect to the Committee, no later than the date that is the later of

December 31, 2008 or forty-five (45) days after (i) the Plan Support Agreements (as such

term is defined in the Motion) have terminated, (ii) the Escrow Payment has been returned

to AEP and (iii) either the Reorganization Plan has been withdrawn or this Court has

entered an order denying confirmation of the Reorganization Plan, such party in interest:

(x) has been granted the power to assert claims or causes of action on behalf of the

Debtors' estates against the Prepetition First Lien Agent or any of the Prepetition First

Lien Lenders (or their respective agents, affiliates, subsidiaries, directors, officers,

representatives, attorneys or advisors) arising out of or in connection with the Prepetition

First Lien Loan Documents, the Prepetition First Lien Obligations or the Prepetition

Collateral, (y) commences an adversary proceeding on behalf of the Debtors' estates

against the Prepetition First Lien Agent or any of the Prepetition First Lien Lenders (or

their respective agents, affiliates, subsidiaries, directors, officers, representatives,

attorneys or advisors) arising out of or in connection with the Prepetition First Lien Loan

Documents, the Prepetition First Lien Obligations or the Prepetition Collateral that

29

contains allegations contrary to such stipulations and admissions and (z) the Court enters final judgment in favor of such party in interest in such adversary proceeding and such judgment becomes final and non-appealable.  If no such adversary proceeding is timely filed, or to the extent the Court does not enter such final judgment in favor of such party in interest in such adversary proceeding, then, without further order of the Court, (a) the Prepetition First Lien Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (b) the Prepetition First Priority Liens shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(d), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (c) the Prepetition First Lien Obligations, the Prepetition First Priority Liens, the Prepetition First Lien Agent and the Prepetition First Lien Lenders shall not be subject to any other or further challenge by the Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding, contested matter or standing request is timely filed, the stipulations and admissions contained in paragraphs 3 and 11 of this Order shall nonetheless remain binding and preclusive as provided in this paragraph on the Committee and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding.  Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including

the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.  Notwithstanding the foregoing, (I) the Committee shall not be required to request standing to commence an adversary proceeding which seeks to challenge, recharacterize, subordinate, avoid or disallow the Prepetition First Lien Obligations, the Prepetition First Priority Liens and/or the Prepetition Collateral, including any claims asserting that the 2006 buyout and finance transaction of the Debtors was a leveraged buyout and/or a fraudulent conveyance, (II) the Committee may not seek oral discovery under oath in relation to any matters that might be asserted in such adversary proceeding absent a showing of cause (but may seek the production of documents, subject to any party's rights to contest such discovery) and (III) the Committee may not incur or expend more than $50,000 (the "Temporary Cap") investigating or researching any of the facts or legal issues that might be asserted in any such adversary proceeding, unless and until (a) (i) the Plan Support Agreements (as such term is defined in the Motion) have terminated, (ii) the Escrow Payment has been returned to AEP and (iii) either the Reorganization Plan has been withdrawn or this Court has entered an order denying confirmation of the Reorganization Plan, or (b) the Court shall have entered an order allowing such actions for cause shown, after which the Temporary Cap shall no longer be applicable.

        18.    *Limitation On Use Of DIP Financing Proceeds And Collateral*. The Debtors shall use the proceeds of the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order, the DIP Documents and the Budget.  The DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders shall have no duty to any other party in interest or the Court

31

to monitor or ensure Debtors' compliance with the Budget and shall not be obligated to pay (directly or indirectly from any of their respective Collateral or otherwise) any unpaid expenses that may have been within contemplation of the Budget when incurred, or, except as provided in paragraph 13(e) hereof, to allow the Debtors to retain funds after an Event of Default to pay any such expenses.  Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Agreement, Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) except to the extent permitted by paragraph 19, object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Prepetition First Lien Loan Documents, or the liens or claims granted under this Order, the DIP Documents or the Prepetition First Lien Loan Documents, (b) except to the extent permitted by paragraph 19, assert any causes of action against the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) after an alleged Event of Default has occurred under the DIP Agreement (except to contest the existence of such alleged Event of Default), prevent, hinder or otherwise delay the DIP Agent's enforcement or realization on the Collateral in accordance with the DIP Documents or this Order, or (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders under this Order or under the DIP Documents.  In the case of each of the foregoing clauses (a) through (d), such action may not be taken without such party's prior written consent, underlined provided that the foregoing clauses (a) through (d) shall not be construed in a manner to deny the Committee and its

32

professionals the right to be paid from proceeds of the DIP Financing and the Prepetition Collateral (including the Cash Collateral) with respect to the Committee's participation generally in these Chapter 11 proceedings, including the posing of any objection to any plan or disclosure statement or other right to be heard on matters before the Court. Additionally, notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Agreement, Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to pay any amount on account of any claims arising prior to the Petition Date, unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents.  Nothing in this paragraph 18 shall limit the Debtors' obligations under Bankruptcy Code section 1129(a)(9), if the Debtors confirm a plan of reorganization, to pay any fees and expenses allowed by a final order under Bankruptcy Code section 330, which this paragraph 18 prohibits payment of from the proceeds of the DIP Financing and the Prepetition Collateral (including the Cash Collateral).

19.    *Committee Rights Reserved.*  Notwithstanding anything to the contrary in this Order, if the Court authorizes the Committee to initiate or prosecute an adversary proceeding as contemplated by the last sentence of paragraph 17 of this Order, the Committee may thereafter move to alter or amend this Order to eliminate or modify any provisions of this Order and the DIP Agreement prohibiting payment of fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition First Lien Lenders or the Prepetition First Lien Agent or with respect to their respective claims against the Debtors or their respective Liens on property of the

33

estate; <u>provided</u> that the Prepetition First Lien Agent and the DIP Agent reserve their rights to oppose such a motion and payment of any Committee fees and expenses from the Prepetition Collateral and/or the Collateral.

20.    *Waiver of Claims and Causes of Action Against The DIP Agent and the DIP Lenders*.  The Debtors have disclaimed or waived any and claims and causes of action against the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, related to the DIP Financing, this Order or the negotiation of the terms thereof and such disclaimer and waiver is hereby approved, subject to the Committee's rights referred to herein.

21.    *Insurance*.  To the extent that LCPI, in its role as Prepetition First Lien Agent under the Prepetition First Lien Loan Documents, is listed as loss payee under the Debtors' insurance policies, LCPI, in its role as DIP Agent under the DIP Agreement, is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations, and <u>second</u>, to the payment of the Prepetition First Lien Obligations.

22.    *Order Governs*.  The rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of the DIP Agent, the Prepetition First Lien Agent, the DIP Lenders and the Prepetition First Lien Lenders arising under this Order are in addition to, and not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors under the DIP Documents or Prepetition First Lien Loan Documents or afforded pursuant to

34

applicable law.  In the event of any actual conflict between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

23.    *Binding Effect; Successors And Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Cases and, in the event of conversion of any of the Cases to a case under chapter 7, in such chapter 7 case as well, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Agent, the Prepetition Second Lien Lenders, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition First Lien Agent, the DIP Lenders and the Prepetition First Lien Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed third party beneficiaries of this Order.

24.    *Limitation of Liability*.  In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral, holding the Liens permitted under

this Order or reviewing the Budget or other information concerning the Debtors, none of the DIP Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Agent, the DIP Lenders and the Prepetition Lenders shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*. as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

25.     *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order.

26.     *Termination of Plan Support Agreements.*  Subject to section 364(e) of the Bankruptcy Code, if the Plan Support Agreements (as such term is defined in the Motion) are terminated, the findings and conclusions in this Order concerning (i) valuation, (ii) the adequate protection of the Prepetition Second Lien Lenders and (iii) the Intercreditor Agreement shall not be binding on the Prepetition Second Lien Agent or the Prepetition Second Lien Lenders.

27.     *Second Lien Lender Information Rights.*  The Debtors shall promptly provide to the Prepetition Second Lien Agent, unless otherwise advised by such

Agent, any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders.

   28. *Committee Fees and Expenses.*  Until a valid Carve Out Trigger Notice is delivered, the Debtors are authorized to pay up to $125,000 per month in allowed fees and expenses of Committee professionals and expenses of Committee members, and the Budget shall so reflect.

   29. Notwithstanding Section 17 (clause (z)), nothing in this Order shall be construed to limit the court's authority to control its docket or schedule pretrial matters or the trial in connection with any adversary proceeding on behalf of the Debtors' estates against the Pre-Petition First Lien Agent or any of the Prepetition First Lien Lenders (or their respective agents, affiliates, subsidiaries, directors,officers, representatives, attorneys or advisors) arising out of or in connection with the Prepetition First Lien Loan Documents, the Pre-Petition First Lien Obligations or the Prepetition Collateral that is premised on allegations contrary to the stipulations and admissions contained in this Order.

END OF ORDER

**IT IS SO ORDERED.**  Scott W. Dales
           United States Bankruptcy Judge  **Dated: June 19, 2008**